I'm Philip Deitch, and I'm presenting the position of the appellant. Most of what I've indicated of the position that we're going to take is set forth in our brief. There is some essential addition that I would offer. One of the concerns that I have in this case is the fact we were dealing with a pro se litigant who is in custody who is attempting to evolve a position from that custody position. Essentially, the primary issue is whether or not he was entitled to an evidentiary hearing on the issues that he raised. One of the concerns in the cases that we have set forth in our brief is that when the record is insufficient, when the record is deficient in some manner, that is the purpose for having an evidentiary hearing. It is the purpose of that hearing to give the appellant, give the defendant an opportunity to evolve the arguments that he would make. Sotomayor Now, what exactly would he have attempted to establish if he'd gotten the hearing? He would have attempted to establish three things. Number one was that there was a nexus between his admitted post-traumatic stress disorder, which I think ultimately was established at the trial. And the issue with the trial was whether or not that condition impacted that which he did. The second thing that he would have attempted to establish was that he did not have the intent to defraud with regard to the YADA software that he firmly believed, he had a good faith belief, that that software had value. The software that was discussed and developed at the trial was apparently a preliminary software to that which ultimately would have been presented, I think it was the difference between YADA 2.5 and YADA 3.0. And he would have attempted to establish that he in good faith believed that YADA software had substantial value, and that was based upon statements that had been made by two witnesses that he proffered, that it had substantial value and that there were some projections as to what it would have been worth. The third and final thing that he would have attempted to establish was that when the name change occurred, in I think it was 1994, the name change that was discussed at the trial, that occurred because of his belief that he was told that it was a mandate from the law that existed at that time, and that contrary to that which had been presented by the prosecution, it was not the beginning of the fraud which ultimately the prosecution claimed evolved. So those are the three things that he would have presented. So why was an evidentiary hearing needed? I mean, most of this seems to turn on his belief, which he may view the world differently, but his belief can be presented to the Court in the form of a declaration by him. I think that he wanted to have the opportunity, and he would have been, in my view, entitled to present an opportunity to have witnesses support the position that he offered. Did he identify who these witnesses are and what they would say? In general, he did. With regard to the post-traumatic stress syndrome, he did not identify the person, but indicated in a letter to his counsel that he had talked to a psychologist that would have established that there was a nexus between his post-traumatic stress disorder and the occurrences that happened at the trial. Secondly, he offered the presentation that there were books, records, and other kinds of things that he had suggested to his lawyer that would have presented But again, anything that he did, anything he suggested to his counsel, anything he sent to his counsel, he could have put in front of the Court in the form of his own declaration. The Court doesn't need an evidentiary hearing to listen to Petitioner say what he has to say. There needs to be some indication of additional evidence that can be generated. And I'm not sure the court, the district court, was ever told or identified what an evidentiary hearing would have been for. Well, I think that, to be specific, I think that the contrary is true. I think that he indicated that he had actually spoken with a psychologist who was prepared to address the issue of the nexus, and he did not identify it. That's true. He did not identify who that psychologist was. And secondly, that, for example, investigation had not occurred in the sense of talking to the Veterans Administration, places that he had been to, books and records that had evolved, things that he could have established that would have shown that there was a nexus between his condition and the occurrences that happened. And I think that one of the things that the Court would ordinarily weigh in determining whether or not to have an evidentiary hearing is how long that kind of a hearing would have occurred or would have taken. And it would not have taken very long, in my view. And I think that because of the fact that he was a defendant, in my view, he was entitled to offer to present evidence of third persons who would have supported his claim. And that certainly is the claim that he has with regard to the post-traumatic stress disorder, which I think pervades the entire case for the defense. I think that that condition, if the nexus could be established, would be an explanation or at least mitigation of a lot of those kinds of things that are set forth by the prosecution in this case as to what occurred earlier. The post-traumatic stress syndrome is a very serious disorder. It causes disorientation. It causes substantial difficulty. Had he been able to establish by independent evidence, particularly a psychiatrist, that there was a nexus between his condition and the occurrences that happened, I think that the result may well have been different. He would have had to establish that the condition, if it existed, affected his capacity to tell the truth. That's true, and I would agree with that. And I don't think there's a question of whether the condition existed. I think it was established that the condition existed. The only question was the scope of that, the magnitude of that condition as to the extent to which it would have impacted that which he did. And whether or not post-traumatic stress disorder is something that affects whether or not he, during the occurrences that are based on the indictment, whether or not he was or was not truthful is a fact that would have been established if there was a nexus that he could establish from a psychologist. He didn't ever put in any affidavits to the effect that it did affect his capacity to tell the truth? He did not, but I think that would have been the function of an expert. And I think the criticism that he has is that the potential of calling an expert that would supplement the determination by the psychologist that testified I think that failure is critical. I think that one of the issues, of course, he raises is that the trial counsel did not attempt to determine whether or not there was, or at least call a witness, that he, that is, Mr. Roberson, had identified that would supply that nexus. And I think that's essentially that which I would present here. First, there was the issue of the post-traumatic stress disorder. And secondly, with regard to the question of whether or not there was a good faith belief in the value of the IATA software, there apparently had been persons whom he identified in his motion and listed the witnesses, the persons he identified in his motion, that would have indicated that the software had substantial value, that 3.0, I think one of the witnesses said, was a major development in this field. There was $200,000 in joint venture capital available. There were projections of $34 million in gross sales by witnesses that he identified. First, he also made statements about actual sales, which turned out not to be true. I agree. So the fact that he might have had a belief in the future doesn't justify misstatements about the past. That's why he needed, in my view, he needed to have witnesses other than himself, because I cannot tell you that there were instances in which the trial record would not disclose that he was not truthful at times. I think that's probably true. That is why one of the important things. But it also suggests that the alleged ineffective assistance wasn't prejudicial, because it wouldn't have mattered to produce a lot of evidence that he believed in the future if he could demonstrate that he lied in the past. Well, he may have lied in the past in some particular instances, but if he had independent witnesses whose credibility was not impeached, I think that would have overcome the misstatements that he may have made at an earlier time. I'm prepared to submit adjournment. Thank you. May I proceed? Good morning, Your Honors. Matthew Stegman for the United States. The defendant in his 2255 motion failed to establish facts that even if true would have entitled him to relief, so he was not entitled to a hearing. Therefore, the district court, who was also ---- I'm confused. Isn't the reason he wants an evidentiary hearing to establish facts? Are you saying that he failed to allege facts which, even if true, would not give him an evidentiary hearing? In order to be entitled to the hearing, he must allege facts, and he failed to even do that, that even if you take the facts that he did allege, they didn't rise to the level that would entitle him to relief. Therefore, there was no right to a hearing. Therefore, the district court, who was also the trial he presided over the jury trial in this case, did not abuse his discretion in denying the motion for the hearing. And if I may specifically, as to the three issues, there's the California driver's license where he claimed that he was forced to change his name by the DMV, and therefore, he wanted to bring on evidence that that, in fact, occurred. The evidence that he offers in his motion, in his 2255 motion, was that there was a witness named Roger Sato from the DMV that would testify that the law was, required a person to prove that they were lawfully here in the United States, and that was exactly the evidence presented by the government at trial by Lillian Martin. He did not, the defendant in his 2255 motion, did not state any facts different than what came out at trial. Furthermore, there was no prejudice, no effective assistance, ineffective assistance, and no prejudice, because he used the name Roberson and the name Robinson simultaneously. So his argument that he didn't, even if you believe what he alleged in the motion, his argument that he was forced to use the name Robinson was false, and the trial judge understood that it was false. He used the name Robinson for purchasing properties and filing bankruptcies, and he used the name Roberson in selling the Yeda security, Yeda software, which was the securities fraud. He also, by the way, used a false Social Security name, Social Security number with the name Robinson. So even if you were to believe that he was forced to change his name, he was using a false Social Security number. If I could move to the issue of the evidence of value of the Yeda software. The defendant does not allege anything that would have changed the course of the trial. And, by the way, the defense attorney said that he did, in fact, interview Talmertal and that Talmertal had said, I was not going to, I was going to refuse to endorse, I refused to endorse the product. But let's assume that it's true that Talmertal would have come in and testified that there was value to Yeda software. The fact that there was, first of all, the trial judge and jury saw the software, saw there was no value, saw it was all plagiarized or mostly plagiarized. But beyond that, beyond the issue of whether or not the software had value, the defendant lied about completely different issues, for instance, whether or not the software was going to be going public, whether or not he had hired Solomon Smith Barney or the law firm of Bartel Eng, whether or not his properties were lost to foreclosure or he sold them to put the money into the software, whether he was a self-made millionaire and he failed to say that instead of a millionaire, he had actually been filing bankruptcy over the two years. He also failed to disclose the desist and refrain order in regards to sale of the securities and that his corporation had been forfeited by the franchise tax board. If I could move on to post-traumatic stress disorder, the defendant was he does not claim that there is a doctor out there who would have testified that there was a nexus between the PTSD and his lies or any other issue in the case. He does not allege that there is a doctor out there that would have said he didn't have the specific intent to defraud. What he says is that there was another expert available to attempt to establish a nexus. He doesn't actually say that there was an expert. Did he identify the other expert? No, sir. No, Your Honor. Did he say what the other expert would have said that was different from what Dr. Larry Warnian said? My reading of his petition is that he did not. Because Dr. Warnian said, if I read it right, that it was within the realm of possibility to quote his language, that there was a nexus between PTSD and some inability to realize he was not telling the truth. But realm of possibility doesn't seem to me to meet the required standard of expert testimony. I would agree, Your Honor. As a matter of fact, Dr. Warnian, who did testify, testified that there was, I believe the words were that there was no relationship, or he could find no relationship between. I see the words. Correct. I agree. So, Your Honors, I would just submit to the Court that the Defendant has failed to allege any facts that would establish a right to relief, and therefore, he failed to establish facts that alleged or that would establish a right to an evidentiary hearing. Thank you. Thank you. We thank both counsels for their argument. The case just argued is submitted.
judges: Fletcher B. , Clifton, Bea